The opinion of the Court was delivered by
Duncan J.
The first error assigned, is in entering the judgment on the verdict, without costs accruing since the appeal from the award of arbitrators, inasmuch as there was no legal award, and the jury found for the plaintiff, six cents damages, and all costs.
The act regulating arbitrations, provides, that if the defendant be the appellant, he shall, with one or more sufficient sureties enter into a recognisance, in the nature of special b.ail, the condition of which shall be, that if the plaintiff *38 shall recover a sum, greater or more favourable than the report of arbitrators, he shall pay all costs that may accrue in consequence of the appeal, together with the sum or value of the thing awarded. The plaintiff in error, contends, that the award was erroneous; that all the parties were in Court, and that the rule of arbitration was entered by two, and the arbitrators have reported only as to one. However erroneous the proceeding might be, it is not a nullity. He had two modes of redress ; one, by entering his appeal, and so bring back the whole cause for decision by jury, or writ of error. If he had pursued the latter mode, and the award had been considered erroneous, the judgment would have been reversed, and the cause remitted to the Court of Common Pleas. He chose the former, and it was restored, as if it never had been arbitrated, except so far as related to the question of costs accruing on the appeal, in the event of the verdict being less favourable than the award. The Court cannot, in this writ, retrospect to the regularity of the award, and reverse all the proceedings on the appeal, because there was error in entering the rule, or in the award itself. But on this record I do not acknowledge any error, for although a general appearance by attorney, by implication, would amount to an appearance for all; yet the parties may consider it otherwise, as an appearance only for those arrested or summoned. The plaintiff and defendant so considered it, for the rule of arbitration, is by the Strohs alone—-the award embraced their case only; and when the plaintiff accepted the plea of Nicholas Stroh, the elder, took issue, and went on to trial as to him, he so considered, and constantly acted on it. The rule of arbitration was taken out by the two Strohs alone ; the arbitrators decided and reported on their case alone; they award, that Nicholas Stroh, the elder, shall pay the plaintiff eleven dollars damages, with costs of suit. In all fair construction, this amounted to a finding in favour of Stroh, the younger; and I think it would be so considered on a verdict; for the Court would mould it into form. Thompson v. Musser, 1 Dall. 462. Burrows v. Heysham, Id. 133. The case of Scott’s Lessee v. Galbraith, is cited by President Shippen, in which a verdict was given at Nisi Frius for the plaintiff in ejectment, for one-half the premises, and nothing was said with respect to the other half. A motion was made in bank to set aside the *39 verdict, but it was allowed to be amended, by' adding, “ and for the residue for the defendant,’’ although there was nothing to amend by, but what was merely implied by the verdict. And under this act of assembly, where the award was for the plaintiff, agreeably to the decision of the board of property, it was held to be sufficiently certain, there being a decision relative to the same land, and between the same parties ; the Court observing, that critical objections, tending to destroy awards, were not to be favoured ; they still receive a candid and liberal construction. Santee v. Keister. 6 Binn. 38. Giving the award this fair and liberal construction, the implication is a manifest and necessary one ; that the arbitrators finding against one defendant only, they acquitted the other; and it is obvious that the plaintiff thus construed this award, for the appeal was by Nicholas Stroh, the elder, alone ; and on the return of the award, he accepts his plea, and goes on to trial as to him. It is true, that after the verdict, and motion for a new trial, he rules the other defendants, Nicholas Stroh, the younger, and MlCulley, to plead; this was an after thought; as Nicholas Stroh, the younger did not appeal; and as the plaintiff did not appeal, the award as to him, remained in full force. If the plaintiff had not so considered it, he would have then ruled him to plead, and if he declined to plead, would have taken judgment by default against him, and the jury would have been sworn, as well to try the issue in the case of the elder Stroh, as to assess damages in the case of the younger; the damages then would have been the same against both.
I do not mean to disturb the law, as to the power of juries in slander, when they find the damages under forty shillings, to give full costs, nor to touch the question, whether this power is confined to cases of slander, or extends to all actions of tort; yet there is certainly very high authority for doubting the exercise of this power in cases of slander. Stuart v. Harkins, 3 Binn, 323. England v. Lewis, 4 Binn. 11. The same high authority expresses his dissatisfaction with the rule even in that case; but although bound by the decision in that action, he considers himself in other instances, at liberty to adopt a construction more agreeable to the intention of the legislature. My opinion is founded on the special provisions of the arbitration law, which is general in its terms, comprehending all actions. *40 whether of tort or contract, giving the right of appeal in all cases, allowing to any party dissatisfied with an award the full benefit of a trial by jury; and in the event of a jury not finding in his favour, as to the whole cause of action, but finding a verdict more favourable than the award, exempting him from all costs which accrued on the appeal. The reason of this is most apparent; the party, by the verdict, is found to be aggrieved by the award ; in seeking redress, costs are necessarily incurred, by the party persisting in the unjust award he has obtained; it is neither just nor reasonable, that he should pay that party these costs; he should.not be damnified by appealing for redress from an unjust sentence, which injustice is established by a verdict. In ascertaning whether the award is more favourable, we are to compare the verdict, with the award, as it stood when filed; if six cents, are a less sum than eleven dollars, the verdict is more favourable, to the amount of that difference. It is fallacious to say, that the subsequent costs would make the verdictless favourable, for that is begging the very question, and estimating the two findings, by allowing the costs from the payment of which, the law has exempted the party. The legislature say, a party appealing, if he succeeds in any degree, is not liable to the costs subsequent to the appeal; the jury here say, the value of the damage, is six cents costs ; the plaintiff' has sustained damage to that amount,, and not to the.amount of eleven dollars ; they cannot then say to the appellant, but because you had the audacity to appeal, we will mulct you in all the costs which have accrued, in your seeking redress from an award, which we pronounce to be unjust more than a hundred fold.
The recognisance on an appeal by the defendant, is to cover all that the plaintiff can recover, the defendant having paid all costs to the time of appeal; the result has not taken place on which he was to pay other costs ; why require security for costs in one event, if he was liable to pay them in another? Expressio unius est exclusio alterius, applies with all its force ; and the legislature by charging him with the costs in one event discharges him in all others; such was the judgment of this Court in Landis v. Shaeffer, 4 Serg. & Rawle, 196. Where the law has not given costs, neither arbitrators,, nor juries, nor Courts can allow them. It would, be a check to the privilege of appeal, did juries possess this *41 power, and men would submit to actual injustice, rather than encounter the risk of an arbitrary discretion, to be exercised by any tribunal. The act of 1814, strengthens this construction, for in regulating-the proceedings of justices of the peace, in trespass, trover and replevin, it provides, that if the damages found by the justice or referees, shall not amount to more than one dollar, the plaintiff shall not recover more costs than damages. It will not be pretended, that a judgment for a less sum with all costs, could be given, for this would be flying in the face of the law. As this is a very important question on a most important law, I have perhaps been led into a length of discussion, which some may think the decision did not justify '; but it appeared to me to require this full examination.
There are two bills of exceptions which remain to be considered. First, The deposition of Robert MiCulley, one of the sons against whom the writ issued. If he was not in Court, the judgment could not be given in evidence, for, or against him ; this, although in all cases it is not the sole criterion in judging of the competency of a witness, yet in this, it is ; he would be still liable, for trespasses are several, and in a separate action, where the plaintiff had not received satisfaction, this recovery could not be pleaded in bar; for the plaintiff would be at liberty to elect de melioribus damnis. If the actions for a joint trespass are separate, one of the company who did the act, may be a witness for the others^ 1 Wash. 187". If he was in Court, the very point is decided in Wakely v. Hart et al., 6 Binn. 316. Trespass for assault and battery against four, two plead to issue, the other two did not plead, nor was judgment taken by default against them; these two were admitted as witnesses for the others ; but if the plaintiff had taken judgment by default, they would have been interested in the verdict, because the jury who would have tried the issue against the two, would have assessed damages against all. I do not know, that one co-defendant could be received as a witness for the plaintiff to inculpate the others, when the trial is against all, because he might cast all the guilt on the others : but he may for the other defendants, when he does not take issue, and judgment is not entered against him, to inculpate himself, and exculpate those on’trial; and his credit, as the credit of all other witnesses, lqft to the jury. There is no error in the admission of this deposition.
*42 The second bill of exception. It is contended, as the evidence offered amounted to a justification, under the act of 29th March, 1813, extending the, 5th section of the act of 23d March, 1809, to the whole State; it could not be given in evidence under the general issue. It is true, that in trespass, a justification must be pleaded. The section provides, that if any dog shall be seen worrying sheep, it shall be lawful for any person seeing the same, to kill such dog; or if any dog shall be known to worry sheep, and information be given to the owner of such dog, if he does not kill him, or cause him to be killed, he shall make full compensation for all damages done by said'dog; and any person seeing the dog running at large, may lawfully kill him. There are two plain answers to this objection; the first is, that it is altogether uncertain whether the dog Beaver, had worried the sheep after the passing of the act. M'-Culleij’s deposition, to which the counsel for the plaintiff in error resort to shew it was after, leaves it in great doubt. Pie says, he killed the dog; that he lived in Dauphin county eight months ; that none of the Strolls aided him; the precise day, he does not recollect, but he resided in Dauphin county six months after he had killed the dog. The worrying of the sheep must have been before the dog was killed, thus leaving it in great doubt, whether it was before or after the passage of the act. If it was before, the defendant could not justify; the act could not operate on prior facts, either on the dog, or his master ; no man but the master, had power over the life of the dog before the act; the dog had not forfeited his life, so that any man might lawfully slay him. But if it were certain, that the dog had worried the. sheep after the passage of the act, still this was good evidence to shew the real value of the dog. The plaintiff, to swell the damages, had given evidence of the many excellent qualities of the dog; a first rate hunting dog, worth a cow, and that the plaintiff would as soon have lost the best horse in his stable, which had cost him one hundred and twenty dollars. The value of the dog was a proper inquiry; the evidence given by the plaintiff, was all proper ; but shall not the defendant, on the general issue, be permitted to contradict this evidence; to say, I never did kill him, although the law authorised me so to do ; but the dog was a most worthless cur, a most mischievous animal, *43 not employed in destroying the wild beasts of the forest, but entering into the fields of his master’s neighbours, and destroying their sheep; that he was a wolf in the clothing of a dog; a caput lupinum, and instead of being of the value of fifty dollars, as the plaintiff states in his writ, he was really of no value beyond' the ,value of his skin; that the whole evidence of the value of the dog is not true, and I will prove it by his own confession ? The evidence did not rest on the act of assembly; was not by way of justification; but on the common law, by shewing the real value of the dog; and if the owner had placed his affections on him, he had placed them, not on the noble animal, a faithful dog, a friend and companion; for the counsel have in such vivid colours represented him to us ; but on the vilest cur that ever cut the throat of a sheep, or sucked his blood. Many cases might be put to illustrate this ; one will suffice. A painter places a man in a picture in a most ludicrous attitude ; he exhibits this for reward, as a show ; the man caricatured enters his shop and cuts the picture to pieces, by which the painter is deprived of the emoluments of his exhibition ; no. one can doubt, but that this might be justified in an action of trespass, yet it can be as little questioned, but it may be given in evidence on the general issue, to shew the real value of the thing destroyed, and reduce the damages to the mere value of the canvas on which it was painted. So here to the value of the dog Beaver’s hide, which the jury have estimated at six cents. There was no error in this record, and the judgment is affirrried.
Judgment affirmed.